[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1103 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1104 
¶ 1. David Moore was convicted in a Madison County Circuit Court on two counts of murder. Aggrieved, Moore appeals, arguing that the court erred in admitting inadmissible evidence, in violating his right to a speedy trial, and in failing to give proper jury instructions. Finding no reversible error, we affirm.
 PROCEDURAL HISTORY AND FACTS
¶ 2. Jackie and Julie Goodin were last seen on October 8, 1996. Jackie Goodin's body was found in the Ross Barnett Reservoir in Rankin County on October 23, 1996. Julie Goodin's body was found on June 13, 1997, off a bridge on Sharon Road in Madison County. Moore was indicted on two separate counts of capital murder by a Rankin County grand jury. After the investigation revealed that the murders had actually taken place in Madison County, the Rankin County indictments were dismissed and Moore was indicted on June 2, 1999, for two counts of murder by a Madison County grand jury.
¶ 3. A trial was held beginning on December 4, 2000. During the trial, a statement by Dayomine Owens was read into the record over the objections of Moore. Owens was incarcerated with Moore in a Dayton, Ohio prison facility in early 1997. However, Owens died prior to the 2000 trial and his statement taken by investigators on April 16, 1997, was allowed in as evidence. In Owens's statement, he stated that Moore had told him that Moore had killed the guy because he was going to be a witness against Moore in a drug case. He stated that Moore tied tire rims to the body and placed the body in the reservoir. Owens stated that Moore said he did not kill the girl but was present when she was shot and that he successfully disposed of the body. *Page 1105 
¶ 4. Dusty Pickett also testified that Moore had tried to get him to take the blame for him while Pickett and Moore were incarcerated in a Rankin County jail facility. Pickett contacted the detectives involved in the case and told them what Moore had said. Pickett said that Moore had admitted to killing both Jackie and Julie Goodin. Moore told Pickett where Julie Goodin's body could be found in order for the police to believe Pickett when he accepted the blame for Moore. However, instead of accepting responsibility for the murders, Pickett told the police where Moore said the body was located. Julie Goodin's body was found wrapped in garbage bags and duct tape off a bridge on Sharon Road in Madison County. Pickett also testified that Moore said he had shot Jackie Goodin, tied tire rims to his feet and placed his body in the reservoir.
¶ 5. After the State rested, the defense called James Evans to testify that he saw the Goodins before they disappeared. However, it was revealed that Evans had been hypnotized after giving his statement to the police. The trial judge allowed his statement to be read into evidence. In addition, Evans remained outside the courtroom during the reading of his statement in case there was a problem, then either side could call him to the witness stand as a live witness.
¶ 6. Shane Pilgrim also testified for the defense. Pilgrim gave a detailed description of his version of the murders of Jackie and Julie Goodin. He stated that Moore did not commit the murders, nor was he present. However, on cross-examination, Pilgrim admitted to initially confessing to the murders of Jackie and Julie Goodin. In addition, he testified to confessing to several other murders that turned out later that either were impossible for Pilgrim to commit or the victim was not murdered but died of natural causes.
¶ 7. Moore was found guilty and received a life sentence on both counts. Post-trial motions were filed and denied. Aggrieved, Moore appeals, arguing several errors occurred during the trial and that his conviction should be reversed.
 DISCUSSION OF THE ISSUES I. WHETHER THE COURT ERRED IN ADMITTING EVIDENCE OF A PRIOR BAD ACT.
¶ 8. Moore argues that the court erred in admitting evidence of a prior bad act over the objections of the defense. He argues that the testimony was highly prejudicial and that the court erred in failing to conduct a balancing test and to give sua sponte a limiting instruction. However, in Moore's post-trial motions, he only argued that the testimony should not have been admitted to show motive.
¶ 9. During the trial, Martin Adams testified that he occasionally worked on cars for Moore. In return, Moore would sometimes pay Adams with cocaine. Moore objected to this testimony, which the trial judge overruled. Adams also testified that two years prior to the murders, Moore had been with him when Jackie Goodin drove by them. Adams stated that Moore said that Goodin could not be trusted and that if anyone "snitched on him (Moore), they would pay."
¶ 10. After Moore objected to the testimony, the trial judge dismissed the jury and held a hearing on the record. The prosecutors tried to show that Moore committed the murders because Moore believed Goodin had set him up in a drug bust for which he was indicted. In addition, the prosecution explained the entirety of Adams's testimony. Although the trial judge admitted the evidence as to motive, he did give the State guidelines to use with Adams because he felt some of the *Page 1106 
information would be inadmissible and highly prejudicial.
¶ 11. This Court has held that "[t]he admissibility of evidence rests within the discretion of the trial court. However, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." Armstrong v.State, 771 So.2d 988, 996 (¶ 36) (Miss.Ct.App. 2000) (citations omitted). Evidence of prior bad acts is not admissible unless used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). Although the evidence may be admissible under Mississippi Rule of Evidence 404(b), the evidence "must still pass through Rule 403, which is the ultimate filter through which all otherwise admissible evidence must pass." Bounds v.State, 688 So.2d 1362, 1370 (Miss. 1997).
¶ 12. Here, the trial court found the evidence to be admissible as to motive. However, Moore argues that the court failed to conduct the balancing test under Rule 403. Although the court did not specifically state that the exchange of cocaine for mechanical work to be more probative than prejudicial, the court stated in its ruling that other statements from Adams would not be allowed due to the statements highly prejudicial nature. Therefore, the trial court did consider the payment in cocaine statement to be more probative than prejudicial.
¶ 13. However, the court did fail to give sua sponte a limiting instruction. We find this error to be harmless. The Mississippi Supreme Court has held that the harmless error analysis applies "in cases where the trial court does not sua sponte give the required limiting instruction when M.R.E. 404(b) evidence is admitted. Webster v. State,754 So.2d 1232 (¶ 22) (Miss. 2000). "[A]n error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." Floyd v. City ofCrystal Springs, 749 So.2d 110, 120 (¶ 37) (Miss. 1999) (citingForrest v. State, 335 So.2d 900, 903 (Miss. 1976)).
¶ 14. In this case, the two witnesses testified that Moore had confessed to them. In addition, a DNA expert testified that the blood discovered in the trunk of Moore's car was that of Jackie Goodin. An expert also testified that the end of the roll of duct tape found in Moore's car matched one of the ends of duct tape used to wrap the body of Julie Goodin. The evidence of Moore's guilt was overwhelming; therefore, a fair-minded jury could have arrived at no verdict other than guilty.
¶ 15. Additionally, Moore's involvement in drugs was mentioned throughout the trial without any objection as to prior bad acts. More importantly, the defense entered Moore's 1996 indictment for selling drugs into evidence. Therefore, we find that the trial judge's failure tosua sponte give a limiting instruction for exchanging cocaine for mechanical work was harmless error.
 II. WHETHER THE TRIAL COURT ERRED IN ALLOWING EVIDENCE BASED ON A DISCOVERY VIOLATION.
¶ 16. Moore argues that the court erred in admitting testimony from the State's expert witness regarding the caliber of the weapon due to an alleged discovery violation. The State's expert submitted his original report, but did not identify the caliber of the projectiles. Steve Byrd from the Mississippi State Crime Lab testified that the projectiles were .25 auto *Page 1107 
caliber. Moore objected and asked to be heard on his objection. The trial judge dismissed the jury and heard the arguments.
¶ 17. Moore argued that he did not receive the supplemental report stating the caliber of the projectiles recovered from the bodies from the ballistics expert until the first day of the trial. However, the prosecution stated that on November 27, 2000, it requested and received the caliber of the projectiles from the ballistic's expert. The prosecution was informed by the expert that the expert had determined the projectiles to be .25 caliber. On that same day the prosecution informed the defense attorney via telephone the information it received from the ballistic expert as to the caliber of the projectiles. During the phone call, the defense attorney was informed that the expert had determined the projectiles to be .25 caliber. The prosecution received the report the next day and faxed the report to Moore's attorney. Additionally, the prosecution submitted to the court the transmittal records from the fax machine which showed a fax was sent to Moore's attorney. On the day of the trial, Moore's attorney informed the prosecution that he had not received the report and the prosecution gave Moore's attorney a copy of the report.
¶ 18. The court found that there had not been a discovery violation due to the fact that the prosecution informed the defense as soon as they knew about the supplemental report. Additionally, the judge determined that even after Moore's attorney received this information, the attorney never attempted to contact another expert, nor informed the court of any problems and announced that the defense was ready for trial the first day. However, out of an abundance of caution, the trial judge asked the State's expert for a name of another expert. The judge then gave Moore's attorney an opportunity to contact the other expert. The expert was unable to assist Moore. The jury was then brought back in and the trial resumed.
¶ 19. This Court is limited in reversing a trial court's actions regarding discovery issues. We may reverse a trial judge's ruling regarding discovery issues only if we find an abuse of discretion.Conley v. State, 790 So.2d 773, 782 (¶ 20) (Miss. 2001). Under the discovery rules "[b]oth the state and the defendant have a duty to timely supplement discovery." U.R.C.C.C. 9.04(E).
¶ 20. Here, the prosecution promptly notified the defendant of the additional report from their expert. We find that the trial judge did not abuse his discretion in determining that no discovery violation occurred.
 III. WHETHER THE TRIAL COURT ERRED IN DENYING PROPOSED JURY INSTRUCTION ON ALLEGED CONFESSIONS.
¶ 21. Moore argues that the court erred in denying a proposed jury instruction on his confessions to Owens and Pickett. He argues that the denial of the instruction denied him the opportunity to present an instruction on his theory of the case. The trial judge denied the instruction finding that it would be an improper comment on the weight the jury should give on a particular piece of evidence.
¶ 22. The proposed instruction stated:
 You may consider the alleged confession in the light of the manner by which you find it was obtained and give it such weight and credibility as you think it is entitled. Unless you believe from the evidence beyond a reasonable doubt that the alleged confession was made by the Defendant, was truthful, was accurately *Page 1108 
recorded, the Defendant understood what was said, and such confession was made by the Defendant of his own free will and was not extorted by threat of harm or promise of benefit, then you must disregard the alleged confession to the extent that these facts tend to discredit it.
Moore argues that he is entitled to have an instruction on his theory of his defense. Although Moore is correct that he is entitled to an instruction on his theory of the case, he is not entitled to an instruction that singles out particular pieces of evidence. Manuel v.State, 667 So.2d 590, 592 (Miss. 1995). This instruction singles out the confession improperly. The jury had already been instructed on their duty to weigh all the evidence which would necessarily include the two statements Moore made to his jail mates. Moreover, "[t]he voluntariness of a statement and its admissibility in evidence is a question for the court to determine and not a question for the jury." Ratliff v. State,317 So.2d 403, 404 (Miss. 1975). Therefore, this assignment of error is without merit.
 IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING DAYOMINE OWENS'S STATEMENT.
¶ 23. Moore argues that the court erred in admitting the statement of Dayomine Owens. Owens died prior to trial. However, the court admitted his statement to investigators concerning statements made to him by Moore while they were incarcerated in a jail in Ohio. Moore argues that the admission of the statement violated his confrontation rights under the Sixth Amendment. In addition, he disputes the reliability of some of Owens's statements.
¶ 24. The admissibility of evidence is within the discretion of the trial judge. Parker v. State, 606 So.2d 1132, 1136 (Miss. 1992). Here, the judge found the statement to be admissible under the Mississippi Rules of Evidence 804(b)(5). If the declarant is unavailable, then five other requirements must be met. Id. at 1138. The evidence must be tested for trustworthiness, materiality, probative value, the interests of justice and notice. Quimby v. State, 604 So.2d 741, 747 (Miss. 1992).
¶ 25. Owens was unavailable to testify because he died before trial. The trial judge found his statement to be trustworthy, material, more probative that prejudicial, in the interest of justice and notice had been received. We find that the trial judge did not abuse his discretion in admitting the evidence. Owens's statement included evidence that could be compared with facts of the case gathered from the police investigation. Owens's statement included facts proven by the evidence such as the location of Jackie Goodin's body and the tire rims tied to his feet. In addition, Moore knew Owens would be used as a witness and received notice that his statement would be used at trial after Owens's death which gave him sufficient time to prepare a response to the statement. Moore was able to question the investigator that took the statement as to the circumstances surrounding the statement. Therefore, this assignment of error is without merit.
 V. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S INSTRUCTION ON AIDING AND ABETTING.
¶ 26. Moore argues that the court erred in granting the State's jury instruction that dealt with aiding and abetting. Moore contends that the instruction was defective, ignored the defendant's state of mind and failed to include "mens rea." However, Moore failed to object to the instruction on those grounds at trial. Moore only objected on the ground that he *Page 1109 
was indicted as the principal and not for aiding and abetting.
¶ 27. In order to preserve an objection on appeal, the defendant must object on the same ground at trial. Norman v. State, 302 So.2d 254, 259 (Miss. 1974). Failure to object at trial waives the objection on appeal. Id. Therefore, we will not address any other issue except for the objection that Moore was only indicted as the principal and not aiding and abetting.
¶ 28. The Mississippi Supreme Court has held that an accessory before the fact is the equivalent of a principal of the crime. Hoops v.State, 681 So.2d 521, 533 (Miss. 1996). The instruction given stated that "each person who was present, consenting to the commission of the crimes and doing any act which aided/assisted or encouraged the crimes, is guilty to the same extent as if the person committed the entire crimes."
¶ 29. Dusty Pickett testified that Moore did not admit that he killed Julie Goodin, but that he was present. Owens's statement provided that Moore stated that he acted alone in both murders. However, Pickett's testimony supports the granting of the accessory before the fact instruction. Therefore, the jury instruction was properly given.
 VI. WHETHER THE TRIAL COURT ERRED IN ADMITTING THE DUCT TAPE DUE TO THE STATE'S FAILURE TO DISCLOSE THE RESULTS OF A FINGERPRINT ANALYSIS ON THE DUCT TAPE.
¶ 30. Moore argues that the trial court erred in admitting the duct tape into evidence because the chain of evidence was not established, nor was he provided with the results of a fingerprint analysis conducted on the duct tape. The State argues that the chain of custody was established and that Moore failed to prove any contamination of the evidence.
¶ 31. The determination of whether the State established the chain of custody of evidence is within the discretion of the trial court. Nallsv. State, 651 So.2d 1074, 1077 (Miss. 1995) (citing Morris v. State,436 So.2d 1381 (Miss. 1983)). The defendant has the burden to prove a break in the chain of evidence. Brooks v. State, 761 So.2d 944 (¶ 18) (Miss.Ct.App. 2000). The supreme court found the test for the chain of custody is "whether there is any indication of tampering or substitution of evidence." Wells v. State, 604 So.2d 271, 277 (Miss. 1992). A break in the chain of custody does not prevent the admission of the evidence, unless there is reason to believe the evidence was tampered with or contaminated. Brooks, 761 So.2d at 944 (¶ 21). Moreover, the State does not have to bring forth every person who handled the evidence to testify, nor account for the evidence every minute of every day.Butler v. State, 592 So.2d 983, 985 (Miss. 1991).
¶ 32. Moore complains that several people who handled the evidence did not testify; however, as stated above that is not the test. Here, Moore fails to show any indication of tampering. The State's expert testified that the duct tape recovered from Moore's car matched the duct tape found on the bags found around Julie Goodin's body. Not only did the tape appear to be the same tape, the end of the roll of duct tape from Moore's car was matched to an end of one of the several pieces of tape on the victim's body. The expert was able to match all but one end as one continuous piece and was able to match one of the ends with the tear from the roll of tape from Moore's car. The testimony from the officers and experts established the chain of custody. No proof of tampering, nor indication of tampering was established.
¶ 33. As for the fingerprint analysis, the State stated that they did not know the *Page 1110 
duct tape had been tested. During the trial, the expert that matched the ends of the tape together testified that the tape presented in the evidence bags at trial had fingerprint dust on them that was not present when he tested the tape. However, his records revealed that after he finished testing the tape, the tape was sent to the fingerprint lab and then released to the sheriff's office. The fingerprint analysis was admitted into evidence, which provided that no latent prints were found.
¶ 34. Moore has failed to provide any showing that the duct tape was tampered with in any manner. We find that the chain of custody of the duct tape was established and that the trial court did not abuse its discretion in admitting the tape.
 VII. WHETHER THE TRIAL COURT ERRED IN DENYING MOORE'S ALIBI INSTRUCTION.
¶ 35. Moore also argues that the trial court erred in failing to grant his alibi instruction. He contends that the court was required to allow a jury instruction on his theory of the case. However, the State argues that the time of the murder was not established and the evidence did not support the instruction. Additionally, Moore did not give the prosecution notice of an alibi defense.
¶ 36. The supreme court has held that a defendant is entitled to an instruction on the defense of alibi when he asserts the defense of alibi and presents evidence in support of the instruction. Morris v.State, 777 So.2d 16, 29 (¶ 63) (Miss. 2001). Here, Moore argues that Investigator Greg Eklund's testimony supported the instruction. Eklund testified that Moore told the investigators that on the night that the Goodins disappeared, Moore spoke to Jackie Goodin after he had paged him while Moore was in Gluckstadt. Moore's alibi instruction stated the following:
 Alibi means elsewhere or in another place. In this case, the defendant is asserting the defense of alibi by saying that he was in Gluckstadt at the time of the deaths of Jackie Goodin and Julie Goodin. . . .
The trial court found that the evidence did not support the instruction, because if Moore spoke to Jackie on the phone, then Goodin was alive at that time. Additionally, the exact time of the murder was never established.
¶ 37. We find that the denial of the alibi instruction was proper. No evidence presented supported such an instruction. Although the defense is entitled to an instruction on their theory of the case, evidence must be presented to support that theory. No such evidence appears in the record. Therefore, this assignment of error is without merit.
 VIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS MOORE'S APRIL 2, 1997 STATEMENT.
¶ 38. On July 6, 1999, Moore filed a motion to suppress any and all statements made by him to law enforcement officers. At an October 2000 pretrial hearing, Moore specifically requested that the April 2, 1997 statement be suppressed. Moore argued that he requested that he be transferred from Rankin County to Winston County and that his request could serve as an inducement to make the statement. No ruling on this motion appears in the record; however, the content of the statement was brought before the court during Eklund's testimony. The court overruled the defense's objections during the trial.
¶ 39. The problem before this Court is not the ruling, but that the tape recording or transcript of the April 2, 1997 statement does not appear in the record. There is no evidence in the record to review the judge's ruling. "Facts asserted to exist must and ought to be definitely *Page 1111 
proved and placed before us by a record, certified by law; otherwise, we cannot know them." Mason v. State, 440 So.2d 318, 319 (Miss. 1983) (citations omitted). Additionally, it was Moore's duty to include all items necessary for his appeal in the record. Branch v. State,347 So.2d 957, 958 (Miss. 1977). Issues not made part of the record will not be reviewed. Jones v. State, 776 So.2d 643, 649 (¶ 17) (Miss. 2000). Therefore, this issue will not be reviewed by this Court.
 IX. WHETHER MOORE'S CONSTITUTIONAL AND STATUTORY RIGHT TO A SPEEDY TRIAL WAS VIOLATED.
¶ 40. Moore argues that this case should be dismissed because he was denied his constitutional and statutory right to a speedy trial. This case is unusual because Moore was originally indicted in Rankin County but those indictments were ultimately dismissed for improper venue. Moore was then re-indicted by the Madison County grand jury. The record from the Rankin County actions are part of the record. The dates prior to the indictments in Madison County are gleaned from the Rankin County docket, several transcripts in the Rankin County record and the Madison County record. The important dates are as follows:
 02/17/97 Arrested on a fugitive warrant in Ohio for the sale of cocaine in Mississippi
 04/16/97 Arrested for Jackie Goodin's murder
 06/12/97 Hearing on Motion for Bond by Defense Attorney William Vick
 06/19/97 Indicted for Jackie Goodin's murder by Rankin County grand jury
 09/17/97 Richard Burdine new attorney for Moore
 12/02/97 Motion for continuance
 01/15/98 Motion for Burdine to withdraw due to Moore's failure to cooperate in his defense
 03/18/98 Pro se motion for speedy trial
 05/12/98 Indicted for Julie Goodin's murder by Rankin County grand jury
 05/29/98 Arraignment; trial date 11/19/98
 11/09/98 Trial continued. Appoint new Public Defender for Moore
 04/09/99 Moore represented by John Enfingere and Dan Duggan. Moore has informed attorneys that he has a new attorney, Azki Shah, who is not present. Speedy trial motion is brought by Duggan, but not discussed due to Moore hiring a new attorney. Trial has been set for May 10, 1999
 04/15/99 Appearance by new attorney, Shah, to set hearing for pretrial motions. Statement is made by court that Moore has had a number of attorneys, but fires them when trial date is close
 05/03/99 Pretrial motions Rankin County.
 05/10/99 Joint motion for continuance to present case to Madison County Grand Jury because venue improper in Rankin County
 06/02/99 Indicted in Madison County for murder of Jackie and Julie Goodin
 07/06/99 Motion filed to quash Madison County indictments for violation of speedy trial rights
 08/12/99 Moore informed by court that his attorney has been disbarred. Court gives Moore an opportunity to decide whether to stay with Shah or hire/appoint new attorney
 10/01/99 Hearing with Moore. Moore states he would like to continue with Shah. Moore stated that it was his choice to continue the trial until Shah became available
 10/22/99 Hearing with Moore. Still wants to continue waiting for Shah
 12/16/99 Rankin County indictments dismissed.
 02/01/00 Order resetting trial
 05/12/00 Hearing with Moore. Moore still wants to continue waiting for Shah
 06/12/00 Hearing with Moore. Shah not responding to court or Moore. Court sua sponte appoints Public Defender for Moore
 08/09/00 Shah appears. Shah officially back as Moore's attorney. Trial set for 10/9/00
 09/06/00 Motion to dismiss due to violation of speedy trial
 09/09/00 Pretrial hearing
 10/06/00 Motion to dismiss indictments for violation of speedy trial
 10/20/00 Pretrial hearing
 12/04/00 Trial begins
¶ 41. "Alleged speedy trial violations are examined and determined on a case-by-case basis due to the factual specifics of each action."Brengettcy v. State, 794 So.2d 987, 991 (¶ 7) (Miss. 2001). The statutory right to a speedy trial attaches at the time of arraignment. Miss. Code Ann. § 99-17-1 (Rev. 2000). A defendant is also guaranteed a right to a speedy trial under the United States and Mississippi constitutions. Watts v. State, 733 So.2d 214, 235 (¶ 61) (Miss. 1999). The constitutional right attaches from the time that the defendant is effectively accused of the crime. Perry v. State, 419 So.2d 194, 198 (Miss. 1982).
¶ 42. A denial of a constitutional right to a speedy trial must by examined *Page 1112 
under the four prong test set forth by the Supreme Court in Barker v.Wingo, 407 U.S. 514 (1972). Mitchell v. State, 572 So.2d 865, 870 (Miss. 1990). "The factors to be considered are: (1) length of delay; (2) reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether defendant was prejudiced by the delay."Barker, 407 U.S. at 530. The Barker factors must be balanced together with the totality of the circumstances. Birkley v. State, 750 So.2d 1245, 1249 (¶ 12) (Miss. 1999).
(a) Length of Delay
¶ 43. Moore was arrested for Jackie Goodin's murder on April 16, 1997. He was indicted by the Rankin County grand jury for the capital murder of Jackie Goodin on June 19, 1997 and for the capital murder of Julie Goodin on May 12, 1998. Those indictments were ultimately dismissed. However, Moore was indicted by the Madison County grand jury on June 2, 1999 for both murders. His trial began on December 4, 2000. Nearly three years and seven months passed between the initial arrest and the trial. The Mississippi Supreme Court has held that any delay of the 270-rule beyond eight months is presumptively prejudicial. Simmons v.State, 678 So.2d 683, 686 (Miss. 1996). Therefore, the length of delay was presumptively prejudicial to Moore.
(b) Reason for Delay
¶ 44. After a finding that the delay is presumptively prejudicial, we now turn to the reason for said delay. As to the time between the initial arrest and indictment by the Madison County grand jury, we cannot determine the reason for delay, because the Rankin County docket does not adequately explain all of the delays. We can only determine facts which are before the Court. Jones v. State, 776 So.2d 643, 649 (¶ 17) (Miss. 2000). However, there are several transcripts of hearings held in Rankin County. From those hearings the cause of delay was Moore continuously discharging, hiring new attorneys and having public defenders appointed as soon as a trial was set to start.
¶ 45. As for the delays after the indictment by the Madison County grand jury, one year of the delay is attributed to the defendant's own desire to continue the case until his attorney, who had been suspended from practicing law, had been reinstated. Moore's own actions caused most of the delays. Therefore, this factor weighs against Moore.
(c) Assertion of Right
¶ 46. A pro se motion for a speedy trial was filed on March 18, 1998 under the Rankin County indictment. Moore filed a motion to quash the Madison County indictment for a speedy trial violation on July 6, 1999. However, this factor must also weigh against Moore. Despite his assertion of the right to a speedy trial, Moore continued to delay the proceedings by changing attorneys or by waiting one year for his attorney to return to the practice of law. Fleming v. State, 604 So.2d 280, 300 (Miss. 1992).
(d) Prejudice
¶ 47. Moore asserts that he was prejudiced by the delay because one witness was unavailable to testify as a live witness. Before James Evans was called as a witness, it was discovered that he had been hypnotized sometime after giving his statement to the police. Evans stated that he believed a Rankin County officer had taken him to be hypnotized. The trial judge allowed his statement to the police into evidence. However, Evans was ordered to remain in the courthouse in case *Page 1113 
either the defense or prosecution needed him. Neither called him as a live witness, even though the opportunity to call Evans to the witness stand was allowed by the judge. When a witness with relevant information becomes unavailable due to delay, prejudice is obvious. Birkley, 750 So.2d at 1252. This factor also weighs against Moore because there is no showing of actual prejudice to his defense as Evans was available.
¶ 48. Additionally, "where the delay is neither intentional or egregiously protracted, and where there is no showing of actual prejudice, the balance is struck in favor of rejecting the defendant's speedy trial claim." Rhymes v. State, 638 So.2d 1270, 1275 (Miss. 1994). In considering the four Barker factors and the totality of the circumstances, we find that Moore's constitutional right to a speedy trial was not violated.
¶ 49. As to the statutory right, a defendant has a right to be tried 270 days after he has been arraigned. Miss. Code Ann. §99-17-1 (Rev. 2000). The commencement of this period begins on the date of the arraignment on the Madison County indictments not the Rankin County indictments, because the Rankin County indictments were dismissed.
¶ 50. Moore filed a waiver of arraignment on June 18, 1999 for the Madison County indictment. More than 270 days passed between this date and the trial date. However, almost one year of the delay from August 12, 1999 to August 8, 2000, was due to Moore's continued desire to wait for his attorney to be reinstated after he was suspended from practicing law. The trial judge gave Moore numerous opportunities during that delay to hire another attorney or for one to be appointed for him. Moore rejected all offers until June 12, 2000, when the court sua sponte
appointed the public defender's officer to represent Moore. However, Moore's attorney began representing him again on August 8, 2000. This Court is confident that if Moore would have hired another attorney or would have allowed the court to appoint one for him, then Moore would have received a trial within the 270 rule. Therefore, Moore was not denied his statutory right to a speedy trial.
¶ 51. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OFCONVICTION OF TWO COUNTS OF MURDER AND SENTENCE OF LIFE ON BOTH COUNTS TOBE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISONCOUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE,IRVING, MYERS AND CHANDLER, JJ., CONCUR.