878 So.2d 144 (2004)
Broderick Barshawn POWELL and Markieves Raymond McAffee, a/k/a Markives Raymond McAfee, Appellants
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01071-COA.
Court of Appeals of Mississippi.
January 20, 2004.
Rehearing Denied May 4, 2004.
Certiorari Denied July 29, 2004.
*146 James A. Williams, Meridian, attorney for appellants.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., IRVING and GRIFFIS, JJ.
*147 GRIFFIS, J., for the Court.
¶ 1. Broderick Barshawn Powell and Markieves Raymond McAffee appeal their conviction for robbery by use of a deadly weapon. They were sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections and pay restitution of $2,400. In their appeal, Powell and McAffee contend that (1) jury instruction C-9 was improper and warrants a new trial, (2) in-court identifications by Boyd were inadmissable, (3) the trial judge erred when he admitted evidence that McAffee participated in an attempted robbery at a Popeye's restaurant, (4) Powell and McAffee were denied a fair trial because the State was allowed to put on evidence of a prior inconsistent statement, (5) the verdict was against the overwhelming weight of the evidence, and (6) Powell and McAffee were denied effective assistance of counsel. We find no error and affirm.

FACTS
¶ 2. On June 22, 2001, Joseph Boyd and Cora Brown were robbed as they closed the Ryan's Restaurant in Meridian. Boyd was the assistant manager, and Brown was an employee. Around midnight, as Boyd was locking the door, two men appeared and told them to get down and give them their money. The two men were wearing bandanas partially covering their faces and each man had a gun.
¶ 3. One of the men told Boyd and Brown to go back inside and open the safe. All four went inside. Boyd turned off the alarm, but activated the ambush code. The code alerted the alarm company that a robbery was in progress. Boyd opened the door to the office, and the men told him to open the safe. One of the men took all the money from the safe. The two men then left the restaurant. An officer from the Meridian Police Department arrived approximately five minutes later.
¶ 4. The grand jury indicted Broderick Barshawn Powell and Markieves Raymond McAfee for robbery by the exhibition of a deadly weapon. At trial, Boyd testified that one of the men was around six feet tall and weighed approximately three hundred pounds. The other man was shorter, around five foot six inches and weighed approximately one hundred and twenty five pounds. Boyd testified that the taller man had a rifle, and the shorter man carried a revolver.
¶ 5. Three days after the robbery, the police brought Boyd twelve photographs of potential suspects. Boyd was not able to identify the robbers from the photographs. Boyd testified that he was concerned that he might not be able to make a positive identification because the two men were wearing bandanas covering their mouth and nose.
¶ 6. Later, Boyd was shown photographs again at the police station. This time he was able to identify one of the men. Boyd testified that the second time he looked at the photos, he concentrated on the upper portion of the men's faces. He testified that he could identify the shorter man because this man had really thick dark eyebrows and short hair. Boyd testified that he was sure he identified the shorter man, which he later discovered was McAffee. At trial, Boyd identified McAffee as the shorter man.
¶ 7. Boyd also testified that he recognized Powell from the pictures shown to him by the police, but not from his own recollection. Boyd testified that Powell had the same build as the taller man who robbed him.
¶ 8. Helen Earl was McAffee's girlfriend. She testified that, on the afternoon before the robbery, McAffee told her *148 he needed money and did not have a job. Earl testified that McAffee later told her that he had money. Earl testified that over the next several days McAffee purchased a car stereo and an outfit.
¶ 9. Rhonda Toole was Helen Earl's sister. She testified that she was at home in her room the night before the robbery. She heard McAffee tell Dennis Earl that he and his cousin[1] where going to rob Popeye's. Toole also testified that, on the night after the robbery, Powell and McAffee were bragging about robbing Ryan's Restaurant. During their comments about the robbery, Powell and McAffee did not say how much money they stole, but they were showing jewelry, clothing and shoes that they had purchased. According to Toole, Powell and McAffee said that they parked their car at K-Mart, walked to Ryan's, and waited for "the man to come out." Toole testified that Powell and McAffee claimed that they pulled a gun on the man and told him to go back inside.
¶ 10. Yolanda Easley was a friend of Powell and McAffee. She testified that, on the night of the robbery, about 10:00 p.m., she and Powell were going to the store. McAffee drove up and asked Powell if they were "going to do that thing." Powell told Easley that he would be back and left with McAffee.
¶ 11. A few nights later, Easley saw Powell at a club. Easley testified that Powell had a new watch and bracelet. Easley testified that she heard Powell tell Toreno Griffen that he and McAffee took $2,700 at the robbery at Ryan's.
¶ 12. The jury found Powell and McAffee guilty of robbery by use of a deadly weapon. Powell and McAffee were sentenced to twenty-five years in the custody of the MDOC and to pay restitution of $2,700.

ANALYSIS

I. Whether the trial judge erred in giving jury instructionC  9.
¶ 13. Powell and McAffee claim the trial judge erred when he charged the jury with instruction C-9. This instruction stated that the jury could find McAffee guilty if it found he acted alone or with another when he robbed Ryan's.
¶ 14. At trial, Powell and McAffee failed to object to this instruction. If no contemporaneous objection is made, the error, if any, is waived. Walker v. State, 671 So.2d 581, 597 (Miss.1995). Accordingly, we find that Powell and McAffee failed to preserve this issue on appeal.
¶ 15. Notwithstanding the procedural bar, this issue is without merit. Instruction C-10 is worded in a manner similar to C-9. The only difference is that C-10 allowed the jury to find Powell guilty if he acted alone or with another. There was no prejudice in the use of these instructions. The instructions correctly told the jury what it must find when it evaluated the evidence before it. We find no error and affirm.

II. Whether the defendants were denied a fair trial when an in-court identification is allowed where no valid out of court identification has been made of either defendant.

A. Whether Boyd's in-court identification of Powell denied him a fair trial.
¶ 16. Powell and McAffee argue the trial judge erred when Boyd was allowed *149 to identify Powell during the trial. The basis for this claim is Boyd's inability to identify Powell in the photographic lineup. Powell and McAffee argue the court should have held a hearing outside the presence of the jury to determine the admissibility of Boyd's identification of Powell.
¶ 17. At trial, Boyd admitted that he did not identify Powell from the photographs shown to him by the police. The prosecutor then asked Boyd if Powell appeared to have the same build as the large man who robbed him. Defense counsel objected to the speculative nature of this question. The judge overruled the objection, and Boyd was allowed to answer. Boyd affirmatively testified that Powell had the same build as the larger man who robbed him.
¶ 18. Again, Powell and McAfee failed to preserve this issue for appeal because they did not object on the ground they now argue. Stringer v. State, 279 So.2d 156, 158 (Miss.1973). Even had they objected, this issue is without merit. Boyd did not identify Powell as the man who robbed him. He simply observed that Powell's build was similar to the taller man. This observation did not rise to the level of an identification. Boyd even stated that he could not say from his own personal recollection if Powell was one of the men who robbed him. Accordingly, this issue is without merit.

B. Whether's Boyd's identification of McAffee from photos was impermissibly suggested by law enforcement.
¶ 19. On the witness stand, Boyd testified that he could identify McAffee from the photos because he had "really thick dark eyebrows." McAffee claims that this characteristic singled him out from the other photographs. No objection was made to Boyd's identification of McAffee. The defendant waives his objection to an in-court identification when he fails to object at trial. Fleming v. State, 604 So.2d 280, 302 (Miss.1992). Furthermore, since no offer of proof was made as to the other photographs, this Court cannot determine if one photo was more prejudicial than the others. Accordingly, this issue is without merit.

III. Whether the trial court erred in admitting evidence that McAffee planned an attempted robbery at Popeye's Restaurant
¶ 20. The prosecution planned to call Rhonda Toole to testify that McAffee planned to rob a Popeye's Restaurant. McAffee and Powell moved the court to exclude Toole from testifying and argued that Toole's testimony was inadmissible under Mississippi Rules of Evidence 402 and 404.
¶ 21. Evidence of other bad acts committed by a defendant is not generally admissible as a part of the State's case-in-chief. Neal v. State, 451 So.2d 743, 758 (Miss.1984). Mississippi Rule of Evidence 404(b) provides "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent...."
¶ 22. "If prior bad acts evidence falls within a 404(b) exception, its prejudicial effect must still be weighed against its probative value to determine admissibility under Mississippi Rule of Evidence 403." Underwood v. State, 708 So.2d 18, 32(¶ 41) (Miss.1998). The Mississippi Supreme Court has required that when evidence is offered under M.R.E. 404(b) and there is an objection which is overruled, the objection is deemed an invocation of the right to *150 a balancing analysis under Rule 403 and a limiting instruction. Robinson v. State, 735 So.2d 208, 210(¶ 4) (Miss.1999).
¶ 23. Here, the trial judge properly followed the required procedure. Upon the defense motion, the trial judge held that "Mr. McAffee makes oral statements of what he was going to do and he ended up robbing Ryan's. I don't know what he intended for that language to mean only that it was said. So, I think it is more probative than prejudicial, and I will deny the motion." The judge instructed the jury not to consider the testimony as a substitute for proof that McAffee committed the Ryan's robbery.
¶ 24. The supreme court has held that we "accord the Circuit Court a certain leeway. The weighing and balancing task assigned by Rule 403 is not one susceptible of mechanical performance. It requires judgment and because such the law gives the Circuit Court discretion." Jenkins v. State, 507 So.2d 89, 93 (Miss.1987). Here, we find no abuse of discretion by the trial judge. Toole's testimony was properly allowed. This assignment of error is without merit.

IV. Whether or not Powell and McAffee were denied a fair trial when the prosecution was allowed to put on evidence of a prior inconsistent statement.
¶ 25. During her testimony, Rhonda Toole contested a few portions of her statement given to Detective J.C. Boswell. To discredit her, the prosecution attempted to admit her statement into evidence. The judge refused to allow it. The prosecution called Detective Boswell to establish the procedure followed when he takes a witness's statement. Detective Boswell testified that he asked Toole questions, and then typed her answers into the computer. He then printed out a copy and asked Toole to read it. Detective Boswell testified that he asked Toole to initial each answer, indicating that the words were hers and that it was the truth. Detective Boswell testified that Toole did this and voiced no problems with the statement's accuracy.
¶ 26. However, on cross-examination, the defense began to question Detective Boswell about the substance of the statement. The prosecution objected, and the judge warned the defense that it was about to "open the door" by questioning Detective Boswell on the content of Toole's statement. The defense replied, "I mean, that's fine" and proceeded to question Detective Boswell about the content of the statement.
¶ 27. On re-direct, the prosecution again tried to have the statement admitted into evidence. The trial judge again denied this request. However, the prosecution was allowed to question Detective Boswell about the content of Toole's statement. The defense did not object to the re-direct examination.
¶ 28. On appeal, Powell and McAffee argue that they were denied a fair trial because Detective Boswell was allowed to testify about Toole's inconsistent statements. The supreme court has held that where opposing counsel "opens the door," the prosecution may enter and develop a matter in great detail. Jefferson v. State, 386 So.2d 200, 202 (Miss.1980). If a defendant opens the door to a line of testimony, ordinarily he may not complain about the prosecutor's decision to accept the benevolent invitation to cross the threshold. United States v. Delk, 586 F.2d 513, 516 (5th Cir.1978). Furthermore, it is not error if the district attorney elicits hearsay statements that are provoked by defense counsel's previous questioning of that witness on the same subject matter. *151 Fairley v. State, 349 So.2d 1050, 1052 (Miss.1977).
¶ 29. Here, defense counsel questioned Detective Boswell about the content of Toole's statements. The judge even warned the defense that it was about to "open the door," and the defense counsel replied that it was "fine." Powell and McAffee cannot now complain that they did not receive a fair trial because the prosecution was also allowed to question Detective Boswell about the content of Toole's statement. Accordingly, this issue is without merit.

V. Whether the verdict was against the overwhelming weight of the evidence.
¶ 30. Powell and McAffee assert that the verdict was against the overwhelming weight of the evidence. The applicable standard of review is stated as follows:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.
Baker v. State, 802 So.2d 77, 81(¶ 14) (Miss.2001) (quoting Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)).
¶ 31. At trial, the defense presented no credible evidence tending to demonstrate the innocence of Powell and McAffee. The defense offered no reasonable explanation for their actions.
¶ 32. The jury heard the testimony of several witnesses that implicated Powell and McAffee. McAffee was identified by Boyd as the shorter man who had a revolver. Helen Earl testified that McAffee told her he needed money and did not have a job. Helen Earl testified that the same night McAffee told her he had money and bought a car stereo and an outfit over the next several days.
¶ 33. Rhonda Toole testified that on the day before the robbery, she heard McAffee tell Dennis Earl that he and his cousin where going to rob Popeye's. Toole also testified that on the night after the robbery, Powell and McAffee were bragging about robbing Ryan's Restaurant. They did not say how much money they stole, but they were showing jewelry, clothing and shoes that they had purchased. Toole also testified that Powell and McAffee said they parked their car at K-Mart, walked to Ryan's, and waited for "the man to come out." Toole testified that Powell and McAffee said they pulled a gun on the man and told him to go back inside.
¶ 34. Yolanda Easley testified that on the night of the robbery, about 10:00 p.m., she and Powell were going to the store. McAffee drove up and asked Powell if they were "going to do that thing." Powell told Easley that he would be back and left with McAffee.
¶ 35. Easley saw Powell a few nights later at a club. She said he had a new watch and bracelet. Easley testified that she heard Powell tell Toreno Griffen that he and McAffee took $2,700 at the robbery at Ryan's.
¶ 36. The identification of one of the robbers by Boyd, the statements made by Powell and McAffee to others, and their behavior after the robbery are sufficient to sustain a finding by a reasonable minded jury that Powell and McAffee committed *152 armed robbery. Accepting as true all evidence favorable to the State, this Court is compelled to conclude that the evidence was of such weight to support the jury's findings. We do not find that the evidence in favor of the defendants was overwhelmingly contrary to the verdict. Therefore, we find this assignment of error to be without merit.

VI. Whether Powell and McAffee were denied effective assistance of counsel.
¶ 37. Powell and McAffee claim they were denied effective assistance of counsel. In reviewing a claim of ineffective assistance of counsel, the defendant must demonstrate that his counsel's performance was deficient and that this deficiency prejudiced him in such a way that he was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The deficiency is assessed by looking at the totality of the circumstances. Hiter v. State, 660 So.2d 961, 965 (Miss.1995). An appellate court applies "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Burns v. State, 813 So.2d 668, 673(¶ 14) (Miss.2001).
¶ 38. In reviewing the complaints about trial counsel, Powell and McAfee have not met their burden. Powell and McAffee argue that their attorney did not properly object to in-court identifications. This was not so. Their counsel placed evidence before the jury that both witnesses had failed to identify Powell.
¶ 39. Powell and McAffee also argue that their attorney should have objected to the admittance of testimony concerning the botched Popeye's robbery. Their counsel did object to this testimony. The objection was overruled.
¶ 40. Finally, Powell and McAffee claim that while their counsel did object to hearsay, there were times when hearsay came in without objections. To support this claim, Powell and McAffee fail to state with specificity when and where counsel failed to make objections. Therefore, we find that Powell and McAffee have not met their burden of demonstrating deficient performance and resulting prejudice. We find this issue to be without merit.
¶ 41. Accordingly, the judgment of the Circuit Court of Lauderdale County is affirmed.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF BRODERICK BARSHAWN POWELL OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS AND RESTITUTION OF $2,400; AND CONVICTION OF MARKIEVES RAYMOND MCAFFEE OF ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS AND RESTITUTION OF $2,400, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.
NOTES
[1] Toole testified she could not pronounce the cousin's name, but that she knew Powell was not McAffee's cousin.