911 So.2d 556 (2005)
Othnel JONES a/k/a Ott Jones, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02017-COA.
Court of Appeals of Mississippi.
March 29, 2005.
Rehearing Denied June 14, 2005.
Certiorari Denied September 22, 2005.
*557 Edmund J. Phillips, Jr., Robert N. Brooks, Philadelphia, Dan W. Duggan, Jr., Brandon, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Othnel Jones was convicted of murder by a jury in Leake County, Mississippi. Jones appeals, claiming ineffective assistance of counsel. He claims his attorney failed to object to testimony of prior bad acts evidence produced by the State, failed to object to a series of leading questions, and allowed the State's witnesses to speculate.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Following a two day trial in the Leake County Circuit Court, Othnel Jones was convicted of murdering Ray Ferguson, in violation of Mississippi Code Section 97-3-19(1)(a) (Rev.2000). The State called ten witnesses, including Steve and Tammy Ferguson, the children of the deceased; Glenda Ferguson, the wife of the deceased; Mark Roberson, a neighbor and an eyewitness; Mark Wilcher, Rhonda Blanton, Jimmy Vance, and Mike Freeney, deputies with the Leake County Sheriff's Department; Sheriff Greg Waggoner; and Dr. Steven Hayne, who performed the autopsy. In his defense, Jones called his wife as a witness, and Jones testified on his own behalf.
¶ 4. According to the State's account of the events that led to Ray Ferguson's death, Jones pulled his truck out in front of Steve and Tammy's car and told them to "pick up some trash or something in the road." Steve refused and told Jones that they had not thrown any trash. Jones retrieved a shotgun from his truck, and Steve told Tammy they should leave. Tammy agreed, and they quickly drove to their parents' house.
¶ 5. When Steve and Tammy arrived at their parents' house, they told their parents what had happened. Someone notified the authorities. A few minutes later, Jones, who was drinking a beer, returned and stopped in front of the Ferguson house. Ray pointed his finger at Jones and asked Jones why he had threatened *558 his children and grandchildren. Jones "went to hollering and cussing to him" and threatened to kill the entire family, starting with Ray.
¶ 6. As Jones continued to scream at Ray, Ray told Jones that he would call the police, and then he turned around and made a few steps towards the telephone. As soon as Ray turned around, Jones pulled a .357 magnum and shot Ray in the back. Ray fell with his back turned against the truck. Jones then pulled the gun on Steve. Because Jones was trying to shoot Steve, Steve fought with Jones, took the gun away from him and hit him with it. Steve pointed the gun at Jones, but Ray implored Steve not to shoot. Steve instead shot the tires and motor of Jones's truck in an unsuccessful attempt to prevent Jones from fleeing the scene. Ray died at the hospital.
¶ 7. Rhonda Lynn Blanton, a dispatcher with the Leake County Sheriff's Office, received a 911 call from the Ferguson residence, reporting that someone had been shot. A short time later, Jones called and asked to speak to the sheriff. After some conversation, Jones admitted that he had "just killed a fellow."
¶ 8. Jones's wife testified on behalf of her husband. Because the Joneses' house was near the Fergusons' house, she could hear the commotion, but she was not an eyewitness. She testified that she heard one shot, then five shots that followed. She admitted that, other than hearing the gunshots, she was unable to discern what had happened at the Ferguson residence. Mrs. Jones said that her husband came home with a black eye, a broken nose, and a bloody shirt. Mrs. Jones described the speech impediment Jones suffered following a stroke in 1988. Mrs. Jones said that he talks slow, and when he gets upset he says the opposite of what he means.
¶ 9. According to Jones's testimony, he had not had any encounters with the Fergusons in several years, except to say "Hello" to them. He denied confronting Steve and Tammy that day and said that Ray had put him in a headlock on three prior occasions. Jones also denied that he had been drinking. Jones testified that he was on his way to his son's house to get a lawn mower. When he approached the Fergusons' house, Ray ran out and flagged him down. Ray entered Jones's truck, tried to bend Jones over, put him in a headlock, and started beating him with his fists. Jones said that someone was beating him on the back as well. He said that his pistol was in the scabbard next to him, and he reached for it. One gunshot was fired, but Jones testified that he was unaware of who shot the pistol because his face was bloody. Jones confirmed that he called the sheriff's office and saying that he killed a fellow, but he said he did it because Ray's wife called and told him, "You killed Ray."
¶ 10. On the evidence that was presented at trial, the jury discounted Jones's version of the events and accepted the State's evidence. Jones appeals, claiming that he received ineffective assistance of counsel.

ANALYSIS

WHETHER JONES RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 11. For a successful claim of ineffective assistance on direct appeal, the appellant must show that the record affirmatively shows ineffectiveness of constitutional dimensions, or that the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge. Read v. State, 430 So.2d 832, 841 (Miss.1983). The question presented is not whether trial counsel was *559 ineffective "but whether the trial judge, as a matter of law, had a duty to declare a mistrial or to order a new trial, sua sponte on the basis of trial counsel's performance." Colenburg v. State, 735 So.2d 1099, 1102(¶ 8) (Miss.Ct.App.1999). Such performance must be "so lacking in confidence that it becomes apparent or should be apparent that it is the duty of the trial judge to correct it so as to prevent a mockery of justice." Parham v. State, 229 So.2d 582, 583 (Miss.1969).
¶ 12. In assessing whether Jones received ineffective assistance of counsel, this Court must determine whether counsel's performance was deficient, and whether the deficiency was so substantial that it deprived the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 13. Jones argues that his trial counsel was ineffective in permitting the State to allow prior bad acts into evidence. See M.R.E. 404(b). The State elicited testimony from Steve about difficulties in the past. At trial, there was testimony concerning a confrontation between Jones and the Ferguson family in 1996. During this occasion, the Fergusons were riding four-wheelers on a dirt road near Jones's house. According to Steve, Jones pulled a gun on Ray and told him he was going to kill Ray one day. On cross-examination, Steve said that Jones threatened "everybody," and Steve called Jones a "bully." Glenda Ferguson testified that Jones objected to the Fergusons' "riding [their] four-wheelers and three-wheelers and things." She testified that Jones wanted to "rule the community" and threatened Ray with the same gun that ultimately killed Ray. The district attorney also elicited testimony from Mark Roberson, who testified that Jones was involved in a confrontation with Roberson's older brother. Roberson said, "[W]e've all had run-ins." Jones claims admission of this statement was error because no time frame was laid out, and Roberson was not explaining any incident in particular. Jones claims that the introduction of these prior bad act testimonies led to Jones being tried and convicted for prior bad acts for which he was not charged.
¶ 14. Jones also argues that his counsel was ineffective for failing to make objections to a series of leading, speculative and argumentative questions.[1] Jones cites to three pages in the trial transcript in which Steve is testifying to "yes" or "no" questions on direct examination, with no objection from Jones's counsel. In another instance, when the district attorney asked Steve why Jones told Ray to come to the truck, Steve testified, "To try to get him out of the yard, I reckon." When the district attorney asked Steve why Jones responded "Because I can" to Ray's question about why he pulled the gun on Ray's family, Steve responded, "He thought he controlled everybody, I reckon." Jones claims ineffective assistance for failure to object to such speculative testimony.
¶ 15. Jones also quotes pages from the testimony of Rhonda Blanton, Jimmy Vance, and Mark Wilcher that show other examples of the district attorney leading his witnesses on direct examination. Jones argues that the district attorney was putting words in the mouths of the witnesses by asking leading questions. During the testimony of Wilcher, the district attorney elicited the following allegedly improper information:
Q: So, far as being able to smell alcohol on the Defendant, you don't know what he had done from twelve noon to *560 one or one-thirty with regard to brushing his teeth or washing his mouth out, chewing gum, eating, or drinking coffee, or anything of that nature, do you?
A: No, sir. I know he had a shower, and I don't know if he was drinking or not.
Q: Or whether he had anything else to drink in that hour or hour and a half?
A. No, sir.
Jones claims that Officer Wilcher was permitted to testify as to a matter that was irrelevant and to which he had no knowledge.
¶ 16. Jones cites other instances in which the district attorney asked witnesses to testify in matters to which only experts could testify. For example, the district attorney asked Steve about the path of the bullet that entered and exited Ray's body. The district attorney asked Jones why there was no gunpowder on Ray's body.[2]
¶ 17. For a defendant to successfully prove ineffective assistance of counsel, the defendant must prove, by a reasonable probability, that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. When a defendant alleges ineffective assistance of counsel, the burden of proof is on the defendant to establish both prongs of the Strickland test. Otherwise, "it cannot be said that the conviction ... resulted in a breakdown in the adversary process that renders the result unreliable." Walker v. State, 863 So.2d 1, 12(¶ 20) (Miss.2003) (quoting Stringer v. State, 454 So.2d 468, 477 (Miss.1984)). In his appeal, Jones has not demonstrated that the outcome of his trial would be different if his counsel had objected to the district attorney's leading questions and the district attorney's eliciting of prior bad acts testimony. He merely asserts, "Had counsel been as diligent with objections on the matters listed in this section of Jones's brief perhaps he would have received a fair trial." That statement does not satisfy the prejudice prong of Strickland.
¶ 18. A defendant has clearly failed to satisfy the prejudice test of Strickland when it is clear from the record that the defendant is "hopelessly guilty. This overwhelming evidence of guilt makes the determination by the jury in this case thoroughly reliable." Ward v. State, 461 So.2d 724, 727 (Miss.1984). In the present case, after the jury rendered a guilty verdict, the judge commented, "On the evidence that was presented, I fail to see how the jury could have returned a verdict other than the verdict they returned."
¶ 19. No one corroborated Jones's version of the events in which he claimed that Ray flagged him down and began fighting with him with no provocation by Jones. All four eyewitnesses explicitly stated that Ray never entered Jones's truck. After Jones testified, the State called Roberson, the Fergusons' neighbor and an eyewitness, as a rebuttal witness. Roberson testified that Ray never entered Jones's truck, never put Jones in a headlock, and was standing at least two feet away from the truck, with his back turned, when Ray was shot. Tammy also testified that Ray was "about two feet" away from Jones's truck and that Ray never reached inside the truck. Glenda testified that when she heard the shot, she turned around and saw Ray fall, with his back *561 turned to the truck, about two feet away from it.
¶ 20. The testimony from trial also shows that Jones grew angry and shot Ray after Ray calmly asked why Jones was threatening Ray's family. Steve testified that Jones started "hollering and cussing to him [Ray]" after Ray asked why Jones pulled a gun on Ray's children. Tammy also heard Jones "raising all kind [sic] of cain. He threatened to kill my father and the family." Roberson could also hear Jones cursing and could hear Ray asking Jones about threatening his "younguns and grandyounguns." As Glenda was trying to take care of Ray after he had been shot, she could hear Ray ask Steve not to kill Jones.
¶ 21. Jones's account of the events that led to Ray's death was not corroborated by any of the eyewitnesses. In addition, none of the physical evidence substantiated Jones's story. Dr. Hayne testified that there was no tattooing or smudging or powder burns at the site of Ray's wound, which shows that the shooting was not within close range. Dr. Hayne testified that the bullet "traveled across the body, going from left to right" and exited through the "front surface of the neck." The district attorney stated in his closing argument:
You will recall [from] the testimony this was a gunshot wound that entered the left part of the back. Think about somebody leaning in a truck, the Defendant trying to reach around however he is going to reach and get two feet away from the left side of the person's back. It would be a good enough trick if he could do that, but then he has got to turn the gun around and get it going where it would come out of the left side of his neck. It just does not make sense.... And it is physically impossible, and it doesn't line up with the other physical evidence, like where Mr. Ferguson fell and the blood you saw on the photograph, how it lined up with the bullet that was found in the tree.
In another section of his closing argument, the district attorney stated:
[Jones's trial counsel] said that Ray Ferguson had grabbed him in a headlock, and apparently, from the Defendant's testimony, Steven was in there beating him on the back. Now, picture this. You've got three people in the window of a pickup truck. You know, to believe the Defendant's story, you've got to believe that somehow or another three grown men were able to fit in this window of the pickup truck, and one of them had the Defendant in a headlock and that Steven was beating on the Defendant, and the Defendant, with these people in his window, was able to reach around from behind with the gun and shoot Ray Ferguson. That's the story the defense is trying to get you to believe.
¶ 22. We find that Jones is unable to show that the outcome of his case would have been different if his counsel had objected to the State's introduction of bad acts evidence or the State's leading questions. The evidence proves that Jones shot Ray in the back while Ray was walking away from the truck. The jury's verdict was thoroughly reliable. "[I]t is impossible to imagine a Mississippi jury that would not have convicted [Jones]. He is hopelessly guilty." Woodward v. State, 635 So.2d 805, 809 (Miss.1993). It is unnecessary for us to reverse and remand.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS *562 APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Jones's trial counsel made one objection throughout the entire trial.
[2] As Dr. Hayne testified, when someone is shot within close range, the gunshot leaves tattooing or powder burns on the body. Jones was unable to respond to the district attorney's line of questioning and replied, "Huh?"