BARNES, J.,
 

 for the Court.
 

 ¶ 1. This appeal proceeds from a conviction of first-degree arson in the Circuit Court of Wayne County against Johnny Bennett. Bennett was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections, ordered to pay $10,000 in restitution, and fined $1,000. Finding no reversible error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On the evening of November 24, 2006, Bennett and his neighbor, Edward Williamson, were socializing after work near their homes in Waynesboro, Mississippi. Bennett allegedly related to Williamson that he “had a problem with” another man, Eddie Poole, and wanted to burn down Poole’s trailer. They were later joined by Bennett’s seventeen-year-old son, Jameer Everett, and his friend, Le-garrian Blakley. All four men got in Williamson’s car and drove around Waynes-boro. Everett and Blakley stated that they went to the trailer where Poole lived with his girlfriend and her four children, but no one was home; so they left. Both Everett and Williamson said that Bennett took a rifle with him. Williamson, however, testified that he and Bennett were the only ones to visit Poole’s trailer, and that was later in the evening after they had dropped off the two younger men. Regardless, Bennett asked Everett to get a gasoline jug, and the four men went to Everett’s house,
 
 [1]
 
 where Everett obtained a used milk jug. The four men proceeded to the gas station and filled the jug.
 

 ¶ 3. After the four men got the gasoline, Blakle/s father called and told him to come home. The others dropped off Blak-ley near his house and then returned to Bennett’s house, where they dropped off
 
 *275
 
 Everett. Williamson objected to taking Everett along because of his young age. According to Everett, Amy Wilson, Bennett’s girlfriend, was home at the time.
 
 [2]
 
 Wilson had been living with Bennett for approximately one month prior to this incident. On Williamson’s and Bennett’s return to Poole’s trailer, Williamson parked near the trailer and waited in the car, while Bennett got out and kicked in the door to the trailer. Bennett poured gasoline in the trailer, ignited it, and then ran back to the car whereupon the two men left. A neighbor, Jennifer Reed, upon hearing some noise outside, looked out her window and saw the trailer on fire. She immediately called 911, while her brother went to the trailer to see if anyone was inside.
 
 [3]
 
 Although the trailer was irreparably damaged, no one was home at the time of the fire. Reed noticed a vehicle parked near the trailer, but as it was dark outside, she was unable to identify any characteristics of the vehicle.
 

 ¶ 4. A couple of days later, Mike Mazin-go, the arson investigator with the Wayne County Sheriffs Department, received a tip from Everett that Bennett was involved in the trailer fire. He then proceeded to interview Williamson and Blakley. Although Williamson did not initially implicate Bennett in the arson, he later changed his story, confessing his and Bennett’s involvement in the fire. A subsequent search of Bennett’s home produced an assault rifle, ammunition, and a document entitled “Constitution of the Vice Lords.”
 

 ¶ 5. Bennett was indicted for first-degree arson on June 20, 2007. He filed a notice of alibi defense on November 16, 2007, which stated that Wilson would testify that Bennett was with her at them home “on the day of November 25, 2006.” A jury trial was held on December 17-18, 2007, and Bennett was convicted of first-degree arson. On January 23, 2008, Bennett filed a motion for a new trial and/or judgment notwithstanding the verdict. The trial judge denied the motion and sentenced Bennett to twenty years in the custody of the Mississippi Department of Corrections and to pay $10,000 in restitution, along with a fine of $1,000. Bennett appeals his conviction citing several assignments of error.
 

 I. Whether the trial court erred in denying an alibi-defense instruction which deprived Bennett of any instruction on his theory of defense.
 

 ¶ 6. The trial court denied Bennett’s alibi instruction as there was no evidence presented at trial that Bennett was somewhere else the night the arson was committed. Specifically, the court noted that Wilson’s testimony only gave Bennett an alibi for the night of November 25th, not the 24th. Bennett argues that Wilson’s testimony was only incorrect because defense counsel gave her the incorrect date of November 25th in a leading question, and a reasonable juror could have inferred that Wilson was referring to the night of the 24th.
 

 ¶ 7. In reviewing the denial of an alibi jury instruction, this Court has stated:
 

 This Court reviews jury instructions as a whole, rather than individually. When a defendant asserts the defense of alibi, and presents testimony in support of that defense, the defendant is entitled to a jury instruction focusing upon such a theory. However, jury instructions
 
 *276
 
 must be supported by the evidence. Where the proof does not support an alibi defense, the instruction should not be granted.
 

 Cochran v. State,
 
 913 So.2d 371, 375 (¶ 14) (Miss.Ct.App.2005) (internal citations omitted). Wilson’s testimony was that she arrived home after work at approximately 8 p.m. on November 25th, and Bennett, Everett, and Blakley were there, standing around and talking. She noted that Williamson was not present. Wilson went to sleep around 9 p.m., and all three men were still there. She also testified that when she awoke, at approximately 1 a.m., all three males were still there.
 

 ¶ 8. We agree with the trial court that, based on the evidence, Wilson was testifying to events on the night of the 25th. Defense counsel specifically asked Wilson about the date in question as follows:
 

 Q. On the night — when I say “the night,” you understand that I’m talking about November the 25th, the evening going into the early morning hours of the 26th? Okay?
 

 A. (Witness nods head affirmatively.)
 

 The State also addressed this issue as follows in its cross-examination:
 

 Q. Okay. But you do remember there being questions about the whereabouts of Johnny Bennett?
 

 A. Yes, sir.
 

 Q. And at the time, you were under the impression that the questions were about the 25th, the evening of the 25th, right?
 

 A. Right.
 

 Q. All right. Not the evening of the 24th?
 

 A. Right.
 

 Q. And everything that you’ve testified to here today has been about the night; that is, the p.m. hours of the 25th of November, 2006 and then the early morning hours of the 26th, right?
 

 A. Yes, sir.
 

 ¶ 9. Even if we assume that Wilson was talking about events on the night of the 24th, we cannot discount the fact that Wilson admitted she was sleeping during the hours that the arson supposedly occurred; therefore, she did not know Bennett’s whereabouts between the hours of 9 p.m. and approximately 1 a.m. “Alibi means elsewhere or in another place.”
 
 Moore v. State,
 
 822 So.2d 1100, 1110 (¶ 36) (Miss.Ct.App.2002). Therefore, for a credible alibi to exist, the defendant must be “at [a] different place so remote or distant or under such circumstances that he could not have committed [the] offense” for which he is being charged.
 
 Tucker v. State,
 
 647 So.2d 699, 705 (Miss.1994) (citation omitted). It would have been possible for Bennett to have left his home and committed the crime while Wilson was sleeping. Williamson testified that Poole’s trailer was located about 10-15 minutes from Bennett’s home. Even if Wilson had testified regarding the correct date, her testimony does not establish sufficient alibi evidence that Bennett was somewhere else when the arson occurred.
 

 ¶ 10. Therefore, we affirm the trial judge’s denial as no evidence was presented at trial to support an alibi jury instruction. This issue is without merit.
 

 II. Whether Bennett was denied his state and federal constitutional rights to effective assistance of counsel.
 

 ¶ 11. In reviewing an ineffective assistance of counsel claim, we apply the two-part test promulgated by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 Watts v.
 
 
 *277
 

 State,
 
 981 So.2d 1034, 1038-39 (¶ 12) (Miss.Ct.App.2008). The test requires a claimant to “show that: (1) counsel’s performance was deficient and (2) the deficiency prejudiced his defense.”
 
 Id.
 
 “In determining whether counsel was ineffective, we review counsel’s performance as a whole in light of the totality of circumstances.”
 
 Coleman v. State,
 
 749 So.2d 1003, 1010-11 (¶ 20) (Miss.1999). Prejudice to a defense will only be found in cases where the claimant has shown that, “but for his attorney’s errors, there is a reasonable probability that a different result would have occurred.”
 
 Watts,
 
 981 So.2d at 1039 (¶ 12).
 

 A. Whether counsel was ineffective for failing to present an alibi defense adequately.
 

 ¶ 12. Bennett argues that defense counsel should have noted the discrepancy in the dates discussed during Wilson’s alibi testimony, and his failure to address this issue at trial prejudiced Bennett’s defense. Counsel for Bennett admitted at trial that he should have addressed the issue regarding the dates, stating:
 

 But, your Honor, the thing I — and to preserve the record, I mean, if — I understand Mr. Angero’s position, but I don’t know if the alibi witness — I didn’t ask her any questions as to Mr. Bennett’s whereabouts on the 24th. She was under subpoena power today. I mistakenly ignored the fact that she was giving testimony as to the 25th and the 26th, and that’s my mistake. It should have been the 24th and the 25th. I think she thought that’s what I asked her.
 

 ¶ 13. Although counsel admits that he incorrectly discussed the wrong dates at trial, the test is whether any mistakes made by Bennett’s counsel prejudiced his defense. We find that it did not. As stated, regardless of the date, no alibi was presented at trial. Wilson never testified that she knew of Bennett’s whereabouts between the hours of 9 p.m. and 1 a.m. on either evening as she was sleeping. Therefore, this issue is without merit as we cannot find where counsel’s failure to address the date issue prejudiced Bennett’s defense or affected the outcome in any manner.
 

 B. Whether counsel was ineffective for failing to object to irrelevant and prejudicial evidence of other crimes or bad acts.
 

 ¶ 14. Bennett claims that defense counsel’s performance was deficient based on his failure to object to the admission of evidence regarding other crimes or bad acts. First, Bennett submits that the State’s repeated references to Bennett’s alleged gang membership in the “Insane Vice Lords” were irrelevant and prejudicial. He also contends that the testimony regarding his possession of an assault rifle on the night of the arson had no bearing on the case as it was not connected to the arson.
 

 ¶ 15. “Evidence of other bad acts committed by a defendant is not generally admissible as a part of the State’s case-in-chief.”
 
 Powell v. State,
 
 878 So.2d 144, 149 (¶ 21) (Miss.Ct.App.2004). “The reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged.”
 
 Denham v. State,
 
 966 So.2d 894, 898 (¶ 18) (Miss.Ct.App.2007). However, evidence of bad acts will be admitted under Mississippi Rule of Evidence 404(b) if they are introduced to prove “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”
 
 Id.
 
 at 899 (¶ 18) (quoting M.R.E. 404(b)).
 

 
 *278
 
 i. Bennett’s Alleged Gang Affiliation
 

 ¶ 16. Bennett argues that the State never offered any basis for the relevance of the introduction of evidence regarding Bennett’s alleged gang affiliation, except to imply that the motive for the arson may have been a gang-initiation ritual for Williamson. Bennett claims that the State failed to prove this at trial since Williamson denied such a claim on direct examination, although he admitted that he had heard Bennett was in a gang. Additionally, evidence was presented that a document entitled “Constitution of the Vice Lords” was found at Bennett’s home, and Wilson admitted at trial that she told Mazingo that Bennett was the “head Vice Lord.” Bennett contends that his counsel should have objected to the testimony and asked for a mistrial, and his failure to do so prejudiced Bennett’s defense.
 

 ¶ 17. Evidence of gang affiliation may be introduced in order to establish motive for the crime, or “interest, bias, or prejudice” on the part of the witness.
 
 See, e.g., Hoops v. State,
 
 681 So.2d 521, 531 (Miss.1996);
 
 Dao v. State,
 
 984 So.2d 352, 361 (¶ 31) (Miss.Ct.App.2007). Further, although “such evidence may be revealing or suggestive of other crimes,” we have found that the admission of this type of evidence may be necessary in order “to present to the jury the ‘complete story of the crime.’”
 
 Hudson v. State,
 
 977 So.2d 344, 349 (¶ 24) (Miss.Ct.App.2007) (citation omitted) (testimony regarding the defendant’s gang affiliation was admissible in order to give the jury a complete understanding of why the witness was afraid of the defendant and, thus, participated in the crime). In the instant case, it appears that the State, in questioning Williamson, was attempting to elicit both motive for the crime — gang initiation or revenge— and to explain why Williamson agreed to participate in the crime. The State in its direct examination of Williamson asked:
 

 Q. Was there any other reason why you might have been afraid of Johnny Bennett and gone through this with him because of anything you knew about Johnny Bennett?
 

 A. No, sir.
 

 Q. Were you being recruited by him for any purpose?
 

 A. Okay. Organization?
 

 Q. Yeah.
 

 A. Yeah, he was — I heard he was in a gang.... But he never just asked me to join the gang, no sir. He just wanted me to....
 

 Q. Did you think you were being recruited?
 

 A. No, sir. Because the way I was told, to be recruited, I mean, you had to go through certain stages and different exercises.
 

 Q. Was this a stage or exercise that you were involved in that evening?
 

 A. No, sir, not to my knowledge.
 

 It is clear that at this point in the testimony, the State failed in its attempt to lay the proper foundation for evidence of Bennett’s gang affiliation to be admitted. Therefore, defense counsel, at the least, should have objected to any further testimony or questioning regarding gang affiliation.
 
 [4]
 
 We find that this failure to object renders defense counsel’s performance deficient and satisfies the first prong of
 
 Strickland.
 

 ¶ 18. Nevertheless, we find that counsel’s failure to object did not prejudice
 
 *279
 
 Bennett’s defense and, therefore, did not satisfy the second prong of
 
 Strickland.
 
 In an analogous case,
 
 Henderson v. Cockrell,
 
 333 F.3d 592, 602-03 (5th Cir.2003), the State introduced evidence of gang affiliation, and the defendant claimed that counsel did not provide effective assistance as he failed to object to its admission. The court, in
 
 Henderson,
 
 held that the defense counsel’s performance was not deficient as there was “not a reasonable probability that the jury would have acquitted [the defendant]” as the evidence of guilt “was overwhelming.”
 
 Id.
 
 at 603. In cases where “it is clear from the record that the defendant is ‘hopelessly guilty,’ ” making the jury verdict “thoroughly reliable,” the prejudice test of
 
 Strickland
 
 is not satisfied.
 
 Jones v. State,
 
 911 So.2d 556, 560 (¶ 18) (Miss.Ct.App.2005) (citing
 
 Ward v. State,
 
 461 So.2d 724, 727 (Miss.1984)). In the matter before us, Williamson, an eyewitness and accessory to the crime, gave evidence which directly attributed the arson to Bennett. This testimony was corroborated by Everett and Blakley, who testified about going to Poole’s trailer and the subsequent purchase of gasoline. We find that this constituted “overwhelming” evidence of guilt showing that Bennett committed the arson; therefore, the admission of evidence regarding gang affiliation was harmless.
 

 ¶ 19. Thus, we find that counsel’s failure to object did not constitute ineffective assistance of counsel as the admission of the evidence regarding gang affiliation did not prejudice Bennett’s defense. This issue is without merit.
 

 ii. Evidence of an Assault Rifle
 

 ¶ 20. Evidence was presented at trial that Bennett had an assault rifle in his possession when he visited Poole’s trailer. Bennett argues that this evidence was irrelevant as no evidence was presented that the weapon was used in connection with the arson, and it was error for his counsel not to object to the relevance of said testimony.
 

 ¶ 21. We find that there was sufficient evidence to show intent or motive as to why Bennett had the rifle when they went to Poole’s trailer. “Evidence of other crimes or bad acts also is admissible to tell the complete story so as not to confuse the jury.”
 
 Williams v. State,
 
 991 So.2d 593, 607 (¶ 49) (Miss.2008). In cases “where another crime or act is ‘so interrelated to the charged crime as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences,’ proof of the other crime or act is admissible.”
 
 Bell v. State,
 
 963 So.2d 1124, 1131 (¶ 16) (Miss.2007) (quoting
 
 Duplantis v. State,
 
 644 So.2d 1235, 1246 (Miss.1994)). Everett and Williamson both stated that Bennett “had a problem” with Poole, and Everett testified that Bennett went to Poole’s trailer with the gun in the car. Mazingo testified that Everett said it “was the gun his daddy had ... when they went to Eddie Poole’s trailer the first time before the fire was set. They had the gun out there to shoot Eddie Poole.”
 

 ¶ 22. We also find that the presence of the weapon had relevance to the arson regarding its effect on Williamson. Williamson testified that Bennett threatened to hurt him if he did not participate. Williamson was also aware that Bennett had a rifle in the car. He testified:
 

 Q. Were there any weapons later on in the car?
 

 A. Yes, sir.
 

 Q. What kind of weapon?
 

 A. Some kind of rifle. It looked like a rifle, but it’s not your ordinary rifle. It looked like something on TV.
 

 Q. Did it look like something that people call assault rifles nowadays?
 

 
 *280
 
 A. Yes, sir.
 

 Q. Where did it come from?
 

 A. N'orthgate.
 

 Q. I mean, whose weapon was it?
 

 A. Johnny Bennett’s.
 

 Q. And what was the purpose of having that in the car?
 

 A. I’m not sure. I just know that he said that if I didn’t help him, he was going to hurt me.
 
 I figured, that was for intimidation maybe.
 

 (Emphasis added). Williamson felt pressure to accompany Bennett to Poole’s trailer because he felt that Bennett might harm him. The testimony regarding the rifle was relevant to show that Bennett may have been trying to intimidate Williamson into participating in the crime.
 

 ¶ 23. We find that the testimony regarding the possession of the rifle was relevant to show motive and intent and to present “the complete story of the crime.” Consequently, we find no deficiency in defense counsel’s performance as it pertains to this issue.
 

 CONCLUSION
 

 ¶ 24. Based on the foregoing, we affirm the trial court’s judgment, finding no error in the trial court’s denial of an alibi jury instruction. We further find that while defense counsel’s performance was deficient in failing to object to references of gang affiliation, such error did not prejudice the defense.
 

 ¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF FIRST-DEGREE ARSON AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY RESTITUTION OF $10,000 AND A FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . Everett lived with his mother at a separate residence, but he occasionally stayed with Bennett at his home.
 

 [2]
 

 . Amy Wilson, who had recently married, was also referred to at trial as Amy Hollinghead. For our purposes, we will reference her as Wilson.
 

 [3]
 

 . The 911 call regarding the fire was recorded at 1:01 a.m. on November 25, 2006.
 

 [4]
 

 . The State later questioned Everett, Mazingo, and Wilson about Bennett's alleged gang affiliation. The State also referenced in its closing ai-gument the fact that Bennett was the “head Vice Lord.”