# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01498-COA

**DARIUS CORNELIUS FORD A/K/A DARIUS**  APPELLANT
**FORD A/K/A DARIUS C. FORD A/K/A**
**CORNELIUS FORD A/K/A POPCORN**

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/2016 |
| TRIAL JUDGE: | HON. CHRISTOPHER A. COLLINS |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD A. REHFELDT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST-CONVICTION RELIEF DENIED |
| DISPOSITION: | AFFIRMED - 07/25/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.**

**WILSON, J., FOR THE COURT:**

¶1. In February 2012, following a jury trial in the Scott County Circuit Court, Darius Ford was convicted of aggravated assault and possession of a firearm by a convicted felon. The court sentenced Ford, as a habitual offender, to concurrent sentences of twenty years for aggravated assault and ten years for possession of a firearm by a convicted felon in the custody of the Mississippi Department of Corrections, without eligibility for parole or probation. This Court affirmed Ford's convictions and sentences on appeal. *Ford v. State*, 139 So. 3d 730, 740 (¶33) (Miss. Ct. App. 2013), *cert. denied*, 140 So. 3d 940 (Miss. 2014).

¶2. In October 2014, Ford filed a motion in the Mississippi Supreme Court for leave to file a motion for post-conviction relief (PCR). The Supreme Court granted Ford leave to file a PCR motion in the circuit court, limited to the issue of "whether trial counsel was ineffective by failing to request an alibi jury instruction." *Ford v. State*, 2014-M-01532 (Miss. Feb. 12, 2015). Ford filed his motion in the circuit court, and in October 2016, the court held a hearing and entered an order denying the motion. Ford filed a timely notice of appeal. We agree with the circuit court that Ford's ineffective-assistance claim is without merit. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On January 11, 2010, Sanford Lackey, a real estate appraiser, was in rural Scott County, Mississippi, photographing several parcels of land along Highway 21. After taking photos of a vacant property, Lackey realized that he had photographed the wrong property. Lackey testified that he drove along the road looking for a place to turn around. He decided to turn around at an old convenience store on Highway 21. As he was turning around, he heard three gunshots. When he looked in the direction where he thought the shots were coming from, he saw a man exit a nearby mobile home and walk toward a gold sport-utility vehicle (SUV). Lackey noted that the man looked in his direction as he descended the steps of the mobile home. The man was wearing a blue sweatshirt and a rolled-up toboggan. Lackey continued along the road, searching for the correct property to photograph.

Lackey testified that after taking the correct photos, he pulled to the side of the road to input another address into his GPS. After setting the GPS, Lackey pulled back onto the road. At that time, he noticed the gold SUV from the mobile home approach his vehicle from behind at a high rate of speed. Lackey sped up. When the vehicle was approximately a car length away, the driver leaned out of the driver's side window, aimed a handgun, and shot through the rear windshield of Lackey's vehicle. Then, the gold SUV turned around and sped away from Lackey. [Lackey] . . . immediately called the Scott County Sheriff's Department and subsequently went to the sheriff's office.

2

While at the sheriff's office, Lackey saw Ford as the law enforcement officers brought him into the station. Lackey later told the officers that Ford was the individual that shot at his vehicle.

Kevin Polk, an investigator with the Scott County Sheriff's Department, testified that he and several other officers responded to the call from dispatch regarding Lackey's incident. He and the other officers went to the vicinity of where the incident had occurred. At the first mobile home that the officers approached, they spoke with Jessica Adams, Ford's girlfriend. Adams told Investigator Polk that Ford had gone to pick up his children from school. Upon hearing this, Investigator Polk and an additional Scott County deputy left the mobile home to intercept Ford on his way back from the school. When Investigator Polk saw Ford's vehicle, he stopped Ford and told him that he needed him to come into the station for questioning. Investigator Polk also had Ford's vehicle towed to the sheriff's department.

Deputy Marcus Lingle, with the Scott County Sheriff's Department, testified that he participated in the search of [the] mobile home once Adams gave the officers written consent to search. During the search, Deputy Lingle found a .40-caliber pistol on the bed and a box of ammunition. . . . [He also found] "either a dark gray or blue sweatshirt" that "matched a description of the upper garment worn by the suspect that day." . . .

Adams testified that although the mobile home was in Ford's mother's name, Ford did not live there. She admitted that Ford was at the home on the day of the incident. According to Adams, she and Ford slept from approximately 9:00 a.m. until 2:40 p.m. on the day of the incident. Adams noted that the male clothing hanging in the closet did not belong to Ford. Also, Adams testified that the gun that Deputy Lingle found on the bed belonged to her, and that Ford did not know that she owned the gun.

Ford testified that he was just one of several men that Adams was seeing at that time. He insisted that he did not live with Adams in the mobile home; that he did not own a firearm because he knew that, as a convicted felon, he could not; and that he did not own a dark blue pullover or sweatshirt. Ford admitted that he was a convicted felon. He also stated that he did not know Lackey and had never seen him prior to the morning of trial.

*Ford*, 139 So. 3d at 733-34 (¶¶3-8). The jury found Ford guilty of aggravated assault and

possession of a firearm by a convicted felon, he was sentenced as described above, and this Court affirmed on direct appeal.

¶4. Our Supreme Court granted Ford leave to pursue post-conviction relief on one issue only: whether trial counsel provided ineffective assistance by not requesting an alibi instruction based on Adams's testimony. In support of this claim, Ford submitted a written statement that Adams gave on January 11, 2010, and a copy of the transcript of her trial testimony. In both her statement and her testimony, Adams stated that Ford arrived at her mobile home around 7:30 or 8 a.m. on the day of the shooting; that she asked him to go to the store to buy bread; that she fried bacon while he was gone; that they ate sandwiches when he returned; that after they ate, they went back to bed; that she woke up around noon and went to the bathroom; that she then went back to sleep; and that Ford woke up and left around 2:40 p.m. to go pick up his kids. Ford contends that Adams's testimony provided an alibi because the shooting occurred around 1 p.m. Although Lackey's testimony is not included in the PCR record, the State's brief on appeal confirms that "[a]ll parties agree the assault took place around 1:00 p.m." This is also consistent with the brief filed by the State in Ford's direct appeal.

¶5. In support of his PCR motion, Ford also submitted an affidavit from attorney Shawn Harris, who, along with Ross Barnett Jr., represented Ford at trial. The affidavit states that "during the course of the trial an alibi . . . was never discussed between counsel or by . . . Ford," and because "no alibi discussions were ever held[,] no alibi instructions were ever

4

submitted to the [c]ourt."

¶6.    After a hearing that consisted solely of oral arguments by counsel, the circuit court entered an order denying Ford's PCR motion.  The court observed that the jury was properly instructed on the elements of the charged offenses and found Ford guilty after hearing Adams's testimony regarding Ford's whereabouts.  The court reasoned that "[i]n returning two guilty verdicts, the jury obviously chose to disregard [Ford's and Adams's] testimony," and the court could not "see how an alibi jury instruction, in this instance, would have changed that."  Ford subsequently filed a timely notice of appeal.

**DISCUSSION**

¶7.    "When reviewing a trial court's denial of a motion for post-conviction relief, this Court will not disturb the trial court's factual findings unless they are determined to be clearly erroneous. . . .  On the other hand, the determination of whether a defendant received effective assistance of counsel is a mixed question of law and fact to be reviewed de novo." *Kambule v. State*, 19 So. 3d 120, 122 (¶6) (Miss. Ct. App. 2009).

¶8.    To prove his trial counsel was ineffective, Ford "must show *both* (1) 'that counsel's performance was deficient'—i.e., 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment'—*and* (2) that he was prejudiced as a result—i.e., 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Wilson v. State*, 198 So. 3d 408, 414 (¶22) (Miss. Ct. App. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 687

5

(1984)). "[T]here is a strong, but rebuttable, presumption that [trial] counsel's performance falls within the range of reasonable professional assistance. To overcome this presumption, the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Wilkins v. State*, 57 So. 3d 19, 22 (¶5) (Miss. Ct. App. 2010) (internal citations omitted).

¶9.     "Traditionally, trial counsel's decision regarding whether to request certain jury instructions is considered trial strategy." *Wallace v. State*, 166 So. 3d 520, 525 (¶17) (Miss. Ct. App. 2014) (quoting *Taylor v. State*, 109 So. 3d 589, 596 (¶27) (Miss. Ct. App. 2013)). "Decisions that fall within the realm of trial strategy do not amount to ineffective assistance of counsel." *Pittman v. State*, 121 So. 3d 253, 258 (¶14) (Miss. Ct. App. 2013).

¶10.     In *Owens v. State*, 809 So. 2d 744, 746-47 (¶¶7-8) (Miss. Ct. App. 2002), and again in *Sims v. State*, 213 So. 3d 90, 101 (¶43) (Miss. Ct. App. 2016), this Court explained "[t]he law relating to an alibi defense involves something more than a simple denial by the defendant that he was present at the precise time the crime was committed":

> [T]he defense requires evidence that the defendant's location at the relevant time was so removed therefrom as to render it impossible for him to be the guilty party. Thus, a defendant in close enough physical proximity to have committed the crime may deny the criminal activity and may affirmatively assert that he was elsewhere at the critical time. However, if the asserted alternate location is such that, based on the version of events contended for by the defense, it would remain within the realm of physical possibility for the defendant to have committed the crime, then the defense is nothing more than a denial and would not rise to the level of alibi. It is a fundamental concept of our system of criminal procedure that an instruction may not be given, even if it correctly recites the law, if there is no evidentiary basis for the instruction.

*Sims*, 213 So. 3d at 101 (¶43) (internal citation and quotation marks omitted).

¶11.    In the present case, Adams's mobile home was located on Highway 21 in the vicinity of the shooting.  Thus, Ford was not "so removed [from the scene of the crime] as to render it impossible for him to be the guilty party."

¶12.    More important, Adams testified that she was asleep when the crime occurred.  In *Bennett v. State*, 18 So. 3d 272, 275-76 (¶¶6-10) (Miss. Ct. App. 2009), we affirmed the trial court's denial of an alibi instruction where the supposed alibi witness was admittedly asleep at the time the crime (arson) occurred.  We reasoned that we could not "discount the fact that Wilson [(the defendant's girlfriend and supposed alibi witness)] admitted she was sleeping during the hours that the arson supposedly occurred; therefore, she did not know [the defendant's] whereabouts between the hours of 9 p.m. and approximately 1 a.m." *Id.* at 276 (¶9).  In *Bennett*, "[i]t would have been possible for [the defendant] to have left his home and committed the crime while Wilson was sleeping," as the crime scene was only "about 10-15 minutes" away. *Id.*  Thus, Wilson's testimony did "not establish sufficient alibi evidence that [the defendant] was somewhere else when the arson occurred." *Id.*

¶13.    The Court's reasoning in *Bennett* is apposite here.  The shooting occurred near Adams's mobile home, and she was admittedly asleep at the time it occurred.  Therefore, her testimony did not provide Ford with an alibi.  It necessarily follows that Ford's trial counsel

7

did not provide constitutionally ineffective assistance of counsel[1] by not requesting an alibi instruction. We also agree with the circuit court that Ford failed to show prejudice, i.e., "a reasonable probability" that an alibi instruction would have changed the result of his trial. *Strickland*, 466 U.S. at 687. The alleged alibi evidence was presented to the jury, the jury obviously did not believe that Ford was asleep in Adams's bed when the crime occurred, and Ford provides no basis for speculation that an alibi instruction would have changed that.

¶14. In summary, the evidence presented at trial did not require an alibi instruction, and we concur in the circuit court's determination that Ford failed to meet his burden of proving that his trial counsel provided ineffective assistance or that he was prejudiced as a result.

¶15. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

---

[1] "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.